UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SUNTRUST MORTGAGE, INC.,

                            Plaintiff,

v.                                         Action No. 3:11-CV-704

SECURITY FIRST BANK,

                            Defendant.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Security First Bank's ("Security First") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 6.) For the reasons stated below, the Court DENIES the Motion.

**I.    BACKGROUND**

This controversy arises from a loan purchase agreement ("Agreement") in which Security First agreed to sell to SunTrust Mortgage, Inc. ("SunTrust") certain residential mortgage loans. SunTrust bought the loans, and then sold the loans to third-party investors. The text of the Agreement does not contain any specific terms regarding the purchase of loans. Instead, each loan purchased by SunTrust was required to conform to SunTrust's underwriting guidelines set forth in its Manual. Paragraph 3.4 of the Agreement defines the role of the Manual:

> The Manual is incorporated herein by reference and shall be deemed to be an inseparable part of this Agreement.  All Mortgage Loans purchased pursuant to the Agreement shall be subject to the terms of the Manual and this Agreement.  In the event of any inconsistency between the provisions of the Manual and the provisions of this Agreement, the provisions of the Manual shall prevail over and supersede the inconsistent provisions of this Agreement.  Purchaser reserves the right to amend or modify the Manual

>(including, without limitation, by adding new provisions of the same or a different nature as the existing provisions of the Manual) in its sole discretion from time to time.

(Compl. Ex. 1 ¶ 3.4.) All loans were required to conform to the guidelines in the Manual "as of the date" the loan was received by SunTrust. (Compl. Ex. 1 ¶ 6.4.1.) The Manual governed, among other things, the closing of loans, approval of loans, warranties and representations, and indemnification. Moreover, under the Agreement, Security First promised that the loans sold to SunTrust were valid and enforceable. Security First also agreed to indemnify SunTrust for any losses arising from the loans.

During the course of the business relationship, SunTrust purchased several loans from Security First, including seven loans identified in the Complaint, and subsequently sold these loans to third-party investors. The seven loans identified in the Complaint allegedly contained misrepresentations or inaccuracies requiring SunTrust to repurchase the loans from the third-party investors or to indemnify the third-party investors for their losses related to the flawed loans. SunTrust therefore claims that each loan described in the Complaint was not delivered to SunTrust in accordance with two provisions of the Agreement: First, SunTrust alleges that the loans violated the provisions of Paragraph 17.1 of the Agreement in which Security First represents both that the mortgage loan documents were "valid and genuine and binding obligations of the Borrower," and that the note was "a valid and genuine, binding and enforceable negotiable instrument and is not subject to any claims, defenses, setoffs or counterclaims." (Compl. Ex. 1 ¶ 17.1.) Second, SunTrust asserts that Security First violated Paragraph 22 of the Agreement, which required Security First to indemnify SunTrust for damages resulting from a breach of any representation or warranty or "any materially inaccurate . . . or misleading information"

2

provided by Security First to SunTrust. (Compl. Ex. 1 ¶ 22.) SunTrust claims that Security First has failed to indemnify SunTrust despite repeated requests.

SunTrust's Complaint, filed in October 2011, asserts two counts of breach of contract against Security First. SunTrust requests damages for losses incurred as a result of (1) indemnifying Fannie Mae for its losses related to the loans, and (2) for losses incurred as a result of repurchasing the loans from Fannie Mae.

**II. LEGAL STANDARD**

A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it. Fed R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Thus, in deciding a Rule 12(b)(6) motion, a court must accept all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam), as well as provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and view those facts in the light most favorable to the plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

Even though a motion to dismiss challenges only the legal sufficiency of a claim, Rule 8(a)(2) requires a plaintiff to allege facts that show that its claim is plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). As the Fourth Circuit has explained, "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). The Court need not accept legal conclusions couched as factual allegations, *Twombly,* 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). A complaint must contain factual

allegations sufficient to apprise a defendant of "notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When adjudicating a motion to dismiss, a court is usually limited to the pleadings and matters of judicial notice. A district court may consider the complaint, its attachments, and documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007).

### III. DISCUSSION

Under Virginia law, mutuality of obligation is essential to a contract. *Crews v. Sullivan*, 133 Va. 478, 485 (1922). "[W]here the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement. Both parties must be bound or neither is bound." *Am. Agric. Chem. Co. v. Kennedy & Crawford*, 103 Va. 171, 176 (1904). Mutuality of promises provides consideration by each party, even if the promises relate to different terms of the contract or depend on the performance of the other party. *C.G. Blake Co. v. W.R. Smith & Son, Ltd.*, 147 Va. 960, 971–72 (1926). In sum, for a contract to be enforceable, both parties must be bound to the agreement by the exchange of promises to act or refrain from acting. *Id*.

Mutuality is determined not at the time of the creation of the contract, but at the time the contract is sought to be enforced. *Asberry v. Mitchell*, 121 Va. 276, 281 (1917) (testing mutuality at the institution of the suit). Thus, a contract that lacks mutuality at its creation may still be enforceable if the parties act in a manner, post-contract creation, that

4

indicates their intent to be bound by the contract. *Schwam v. XO Commc'ns, Inc.,* 2006 U.S. App. LEXIS 7428, at *9 (4th Cir. Mar. 24, 2006) (per curiam).

Security First asserts that the Agreement lacked mutuality at the time of its creation, and that no performance by the parties ever cured that lack of mutuality. Therefore, Security First argues the Agreement is unenforceable, and that the Court must grant its Motion.

Pointing to Paragraph 3.4 of the Agreement, Security First asserts that the Agreement lacked mutuality at the time of its creation as it gives SunTrust unfettered discretion in its performance on the contract. As Paragraph 3.4 states that the Manual prevails over and supersedes any inconsistent provision in the Agreement, Security First argues that SunTrust has no limitations on its ability to change the Manual, to change or delete provisions, or to add provisions not currently covered by the Manual. This ability to change any term at any time, Security First contends, destroys mutuality and renders the Agreement unenforceable.

Security First relies on *Davis v. George Mason University*, where the court dismissed a breach of contract claim, finding the university catalog unenforceable for lack of mutuality. 395 F. Supp. 2d 331, 337 (E.D. Va. 2005). A provision in the catalog gave the university the ability to change any policy in the catalog effective against students already enrolled. *Id*. Security First asserts that the Agreement grants SunTrust the same "unfettered discretion" to make changes as the contract in *Davis* did. Security First claims that SunTrust's ability to change the terms of the Agreement in any way, and at any time, effectively frees SunTrust from any obligation.

5

Further, insisting there was never any performance that could cure SunTrust's unfettered discretion, Security First attempts to distinguish this case from *Schwam*, *supra*, where the Fourth Circuit found that a party not bound at the time of contract formation became bound due to its post-contract formation performance. In *Schwam*, an employee sued under breach of contract and unjust enrichment theories for commissions he would not have been entitled to under a binding commissions agreement with his employer. (The employee had been paid the commissions due under the agreement, but was seeking to recover post-termination commissions generated by the contracts he had procured during his tenure with his employer.) 2006 U.S. App. LEXIS 7428, at *1–3. The employee claimed that the employer's freedom to terminate the commissions agreement at any time rendered the agreement "illusory" and therefore unenforceable. *Id.* at *7. The Fourth Circuit, however, held that the employer was bound to the contract at the time the litigation was filed, as the parties "performed numerous acts indicating their intent to be bound" by the commissions agreement prior to the employee's termination. *Id.* at *9. According to Security First, the Fourth Circuit so held because in this circumstance, "there was no risk that the employer, the unbound party, could take advantage of its unfettered discretion to terminate the commission agreement." (Def.'s Mem. in Supp. 10.)

This case is different from *Schwam*, according to Security First, because "the risk that the 'bound' party [i.e., Security First] would not be able to hold the 'unbound' party [i.e., SunTrust] to the bargain contained in the agreement [i]s very real at the time the court [i]s called upon to determine enforceability." (Def.'s Mem. in Supp. 11.) In *American Agricultural*, for example, the seller prepared fertilizer and offered it to the buyers, yet the seller, who had a unilateral ability to terminate, was not bound to the contract until the

6

buyer accepted the goods. 103 Va. at 176. Therefore, the seller did not have a cause of action for breach of contract as the parties' performance could not bind the seller to the contract. *Id*. The Supreme Court of Virginia similarly invalidated a contract for lack of mutuality where the Town and City of Roanoke entered into a contract providing for the sale of water by the City to the Town as long as the Town requested. *Town of Vinton v. City of Roanoke*, 195 Va. 881, 896 (1954). The Town had no obligation to receive the water, yet the City was "bound" under the contract to furnish as much water as the Town requested. Accordingly, the court held that the contract lacked mutuality. *Id*. In *Busman v. Bereen & Barry Investments, LLC*, the Memorandum for Sale of a property contained a provision freeing the seller of any obligation to perform on the contract. 69 Va. Cir. 375, 378–79 (Va. Cir. Ct. 2005) (Fairfax County). Finding the provision indistinguishable from the fatal provision in *American Agricultural*, the trial court refused to enforce the contract. *Id.* at 379.

Security First applies these holdings, and in addition the district court's holding in *Davis*, to assert that the performance of the parties did not cure the lack of mutuality evident in the Agreement. At the time this lawsuit was filed, Security First claims that SunTrust still retained the ability to make any changes to the Manual.

SunTrust asserts that Security First's view of mutuality is too narrow. SunTrust states that both parties exchanged binding promises, creating a valid contract supported by consideration: SunTrust bought the seven subject loans in accordance with the terms of the Agreement, and Security First promised that those loans were valid and free of defects. Under Paragraph 6.4.1 of the Agreement, all Security First loans were required to conform to the guidelines in the Manual as of the date the loan was received by SunTrust:

> If [SunTrust] issues a Purchase Agreement Component Advice to [SunTrust] for Conventional Mortgage Loans, then each Conventional Mortgage Loan

> purchased by [SunTrust] must conform to [SunTrust's] underwriting guidelines as set forth in the Conventional Mortgage Loan portion of the Manual as of the date the Credit Package is received by [SunTrust] or by [its] designated underwriter.

(Compl. Ex. 1 ¶ 6.4.1.) Furthermore, SunTrust asserts that the Manual guidelines in effect when SunTrust purchased the loans remained constant throughout the life of those loans, and that Security First is incorrect in claiming that SunTrust could change the terms of the Manual and apply them retroactively to the loans at issue. Security First's reliance on the mutuality cases it cites, in SunTrust's view, is misplaced. In contrast with the cases cited by Security First, the Agreement does not place improper control in the hands of either party. Unlike the offending terms in *American Agricultural*, *Town of Vinton*, and *Busman*, SunTrust claims the terms of the Manual are neither illusory nor optional as SunTrust does not have the ability to change its obligations regarding the subject loans.

But even if the Agreement lacked mutuality, SunTrust contends that the parties' performance was sufficient to establish a binding contract. First, SunTrust asserts that Security First incorrectly distinguished the facts of *Schwam* from those in the instant matter. Security First focused on the fact that the employment relationship had already been terminated, and that therefore, there was no reason to find the agreement unenforceable on the ground that the employer could not be bound. SunTrust states that the Fourth Circuit did not use this reasoning, however, and instead based its holding on the pre-termination performance of the parties, as there could "be no doubt that [the employer's] post-formation acts sufficiently bound it to the [agreement]." *Schwam*, 2006 U.S. App. LEXIS 7428, at *10. SunTrust further states that the *Schwam* court cited the employer's post-formation acts as the distinguishing element from the holding in *American*

8

*Agricultural*, in which the parties never performed any post-formation acts consistent with the promises in the contract.

SunTrust also cites a recent Western District of Virginia decision applying *Schwam*. In *Cauvel v. Schwan's Home Service, Inc.*, the district court determined whether a Sales Incentive Plan ("SIP") was void for lack of mutuality as the employer retained the ability to terminate or change the plan at any time for any reason. No. 6:10-cv-00012, 2011 U.S. Dist. LEXIS 13440, at *19–20 (W.D. Va. Feb. 10, 2011). While the employer had absolute control over the plan, the court found that the employer had taken steps "consistent with the terms of the agreement" that indicated the employer's intent to be bound by it, and had not changed the terms of the plan during the entire period in question. *Id*. at *23. Therefore, the contract met the test of mutuality. *Id*. at *24. Relying on *Schwam* and *Cauvel*, SunTrust asserts that the "extended, traditional transactional relationship" between the parties demonstrated their intent to be bound by the terms of the Agreement with the sale of each individual loan. Therefore, in testing the mutuality of the Agreement at the present time, the parties' course of dealing evidences the existence of mutuality.

As is clear by now, there are two relevant issues at play in the determination of whether SunTrust can hold Security First to the Agreement: (1) whether the Agreement satisfies the requirement of mutuality of obligation; and (2) if the Agreement lacks mutuality, whether the parties' performance under the Agreement cures the lack of mutuality. Virginia courts have interpreted the requirement of mutuality to prohibit the enforcement of contracts containing provisions which give one party unfettered discretion as to its performance. Fourth Circuit precedent applying Virginia law, however, makes clear that where a party not bound at the time of contract creation later performs consistently

with the terms of the contract, the illusory nature of that party's promise is removed. Such post-formation performance is valid consideration and will form a binding contract.

Whether the Agreement in this case satisfies the test of mutuality is a close call. The Agreement appears to grant SunTrust the same unfettered discretion to modify the contract as provided for in *Davis*: Paragraph 3.4 of the Agreement incorporates the Manual into the Agreement and states that SunTrust "reserves the right to amend or modify the Manual . . . in its sole discretion from time to time," by adding, deleting, or altering any provision. Additionally, in the event of any inconsistency between provisions in the Agreement and the Manual, Paragraph 3.4 provides that the Manual "shall prevail over and supersede . . . the Agreement." Moreover, while Paragraph 6.4.1 of the Agreement states that all loans were required to conform to the guidelines in the Manual as of the date SunTrust received them, Paragraph 3.4 allows for SunTrust to change the Manual, and those amendments would supersede the inconsistent provision in the Agreement. Therefore, despite its claim to the contrary, it seems SunTrust could change the terms of the Manual and apply them retroactively to the loans at issue.

The Court need not make an ultimate determination as to whether the terms of the Agreement relieved SunTrust of the obligation to fulfill its promises at the time of contract formation, however, because it is clear that the parties' post-formation performance renders this contract enforceable.

In the *Schwam* case, XO, the employer, and Schwam entered into an SIP in which XO maintained the authority to "amend, supersede, or terminate this Plan at any time and at XO's sole discretion." 2006 U.S. App. LEXIS 7428, at *7 (internal quotation marks omitted). While the court stated that the contract appeared unenforceable as the promise was

illusory due to lack of mutuality, XO's "consistent performance and compliance with the SIP remove[d] the illusory nature of its promise leaving the SIP enforceable." *Id*. at *9. XO paid Schwam consistently with the plan and Schwam accepted the compensation and continued to work. *Id*.

The reasoning of *Schwam* was recently applied by the district court in *Cauvel*. In *Cauvel*, the court addressed whether a clause giving the employer "full and final authority to terminate, change, amend, administer and rescind [the company's SIP] at any time with or without notice for any reason . . . rendered illusory [the employer's] conditional promise to pay a bonus," its consideration for the contract. 2011 U.S. Dist. LEXIS 13440, at *18–20. Applying *Schwam*, the court found the contract enforceable. As in *Schwam*, the employer reserved a right to cancel or amend the plan at any time, but took steps consistent with the terms of the plan that indicated its intent to be bound by it. *Id.* at *22–24. Specifically, the employer calculated the employee's bonus compensation, presented the employee oversized checks with Cauvel's name on them, and distributed additional bonuses to other employees during this period. *Id*. at *23. There was no evidence that the employer terminated or modified the terms of the plan at any point. *Id*. Therefore, the court concluded that the plan was enforceable even though the employer was not initially bound to pay the bonus. *Id.* at *23–24. *American Agricultural* was distinguishable, said the court, because the seller in that case never performed any post-contract formation acts consistent with its original promise; therefore, the lack of mutuality could not be cured. *Id.* at *21–22.

The parties in the present matter entered into the Agreement February 1, 2001. For a decade, the parties have continuously bought and sold loans. This lengthy transactional history between SunTrust and Security First is evidence of "consistent performance and

compliance" with the Agreement which "removes the illusory nature of [SunTrust's] promise," rendering the Agreement enforceable. As in *Schwam* and *Cauvel*, the parties performed consistently according to the provisions of the Agreement: SunTrust bought loans from Security First over the length of a decade-long relationship in which there is no evidence that SunTrust terminated or modified the terms of the Agreement. It is ultimately insignificant that SunTrust, even at the time the contract is sought to be enforced, appears to retain the authority to make any changes it desires to the Agreement. While it is true that the contracts at issue in both *Cauvel* and *Schwam* were terminated at the time of litigation as the employment itself had ended, both cases focused on the *pre-termination* acts of the parties. The parties' performance prior to termination in those cases, as here, cured the lack of mutuality by evidencing their intent to be bound by the contract through various acts consistent with it, even though the initially "unbound" party continued to retain full discretion to change the contract.

**IV. CONCLUSION**

For the reasons stated above, the Court DENIES Security First's Motion to Dismiss under Rule 12(b)(6).

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

> _____/s/_____
> James R. Spencer
> United States District Judge

ENTERED this __7th__ day of March 2012