IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SUNTRUST MORTGAGE, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:11-cv-704 |
| SECURITY FIRST BANK, | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, Security First Bank, by counsel and pursuant to Local Rule 7(F), states the following in support of its Motion for Partial Summary Judgment (the "Motion") filed herein:

**Summary of Argument**

The undisputed facts made clear from SunTrust's pleadings and its discovery responses show that, as a matter of law, SunTrust cannot prevail on its indemnification claims related to two of the seven loans at issue in this case. SunTrust's entire claim related to the Gilmore Loan is that the property securing the loan lacked final inspections and a certificate of occupancy. SunTrust has identified one paragraph of the Correspondent Loan Agreement (the "Agreement") as grounds for Security First's liability for that Loan. Expert testimony is required to prove a breach of the identified paragraph. SunTrust has not identified an expert and the time for doing so has expired. Accordingly, SunTrust should be barred from introducing any evidence of a breach of paragraph 17.11 as to the Gilmore Loan. SunTrust cites to two grounds for Security First's liability on the Olivas Loan: a lack of a certificate of occupancy for the property securing

the loan and a misstatement of income by the borrower. The first ground fails for the same reason it fails on the Gilmore Loan. Thus, SunTrust should be barred from introducing evidence related to the lack of a certificate of occupancy on the Olivas Loan. The misstatement of income cannot be the basis for holding Security First liable for indemnification on the Olivas Loan because that ground is outside of the Agreement's indemnity clause. The clause only makes Security First liable for breaches of warranties that result in a loss. Here it is undisputed that SunTrust's payment to Fannie Mae (the loss for which it seeks indemnity) was based only on the occupancy issue; the misstatement of income was not a factor. Thus, SunTrust cannot create the causal link between the misstatement of income and its loss that is required to trigger Security First's indemnification obligation. Accordingly, the Court should hold that SunTrust's second basis for its claim on the Olivas Loan is outside the scope of the clause on which the claim is based.

**Statement of Undisputed Facts**

1. On February 1, 2012, Security First and SunTrust Mortgage, Inc. ("SunTrust") entered into the Agreement. (Compl. ¶ 5.)

2. On July 25, 2006, Security First sold the Gilmore Loan (defined in the Complaint) to SunTrust. (Compl. ¶ 31.)

3. The Gilmore Property (defined in the Complaint) did not receive all final inspections and did not have a certificate of occupancy. SunTrust has alleged that these violations constitute a breach of Security First's warranties. (Compl. ¶ 33.)

4. On May 4, 2012, Security First requested that SunTrust identify how the failure to obtain inspections and a certificate of occupancy for the Gilmore Property constituted a breach of

Security First's warranties. In response, SunTrust cited to paragraph 17.11 of the Agreement in which Security First warrants that there are no circumstances or conditions with respect to the mortgage loan or secured property that could reasonably be expected to affect the Gilmore Loan's acceptability as an investment or its value or marketability. SunTrust went on to explain that the lack of final inspections and certificate of occupancy affected the loan's acceptability to SunTrust's secondary investor as well as its value and marketability. (Declaration of Kevin J. Funk, ¶ 4.)

5. The Federal National Mortgage Association ("Fannie Mae") was the third-party investor of the Gilmore Loan. (Compl. ¶ 32.)

6. On November 2, 2007, Security First sold the Olivas Loan (defined in the Complaint) to SunTrust. (Compl. ¶ 46.)

7. The Olivas Property (defined in the Complaint) did not have a certificate of occupancy. SunTrust has alleged that this constituted a breach of Security First's warranties. (Compl. ¶ 49.)

8. SunTrust alleges that the borrower of the Olivas Loan overstated his income on his loan application. SunTrust has alleged that this constituted a breach of Security First's warranties. (Compl. ¶ 49.)

9. On May 4, 2012, Security First requested that SunTrust identify how the failure to obtain a certificate of occupancy for the Olivas Property constituted a breach of Security First's warranties. In response, SunTrust cited to paragraph 17.11 of the Agreement in which Security First warrants that there are no circumstances or conditions with respect to the mortgage loan or secured property that could reasonably be expected to affect the Olivas Loan's acceptability as an investment or its value or marketability. SunTrust went on to explain that the lack of a

3

certificate of occupancy affected the loan's acceptability to SunTrust's secondary investor as well as its value and marketability. (Declaration of Kevin J. Funk attached hereto as <u>Exhibit A</u>, ¶ 4.)

10.  SunTrust did not identify an expert witness in this case. Pursuant to the Pre-Trial Order entered in this case, SunTrust was required to identify any expert in support of its case-in-chief by June 11, 2012. (Declaration of Kevin J. Funk, ¶ 5.)

11.  Fannie Mae was the third-party investor of the Olivas Loan. (Compl. ¶ 47.)

12.  In demanding repurchase of the Olivas Loan, Fannie Mae never raised the borrower's misstatement of income; it only cited to the lack of a certificate of occupancy. (Declaration of Kevin J. Funk, ¶ 6.)

## Questions Presented

1.  Can SunTrust prove a breach of paragraph 17.11 of the Agreement without an expert witness?

2.  Can SunTrust raise the misstatement of income on the Olivas Loan as grounds for its indemnification claim where the misstatement of income was not a basis for SunTrust's payment to Fannie Mae?

## Partial Summary Judgment Standard

Rule 56(a) provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact". Rule 56(a) further provides for summary judgment as to a portion of an action. Courts apply the same standards in evaluating a motion for partial summary judgment as they do in evaluating motions for summary judgment generally. See <u>Norcal Gold, Inc. v. Laubly</u>, 543 F.Supp.2d 1132, 1135 (E.D. Cal. 2008); <u>Sachs</u>

v. City of Detroit, 257 F.Supp.2d 903, 911 (E.D. Mich. 2003); Paraskevaides v. Four Seasons Washington, 148 F. Supp.2d 20, 23 (D. D.C. 2001).

## Argument

A.     SunTrust cannot prove that the lack of final inspections and failure to obtain a certificate of occupancy is a breach of warranty with respect to the Gilmore Loan or the Olivas Loan without expert testimony.

SunTrust alleges in its Complaint that when Security First sold the Gilmore Loan to it without a final inspection and certificate of occupancy, Security First breached certain warranties contained in the Agreement. (Compl. ¶ 33.) Similarly, the Complaint also alleges that the lack of a certificate of occupancy accompanying the Olivas Loan also violated the same warranties. (Compl. ¶ 49.) Specifically, with respect to the Gilmore Loan, SunTrust explained in its discovery responses that,

> Pursuant to Paragraph 17.11 of the Agreement, Security First represented and warranted that no circumstances or conditions existed "with respect to the Mortgage Loan, the Secured Property, the Borrower, or the Borrower's credit standing that" could reasonably be expected to affect the Gilmore Loan's acceptability as an investment or affect its value of marketability. The lack of a final inspection or certificate of occupancy for the Gilmore Property, which secured the Gilmore Loan, affected the Loan's acceptability as an investment to SunTrust's secondary investor as well as its value and marketability, thus violating the representations and warranties of Paragraph 17.11

(Pl.'s Response to Def.'s First Set of Interrogatories and Requests for Production, at 5.) SunTrust gave a nearly identical explanation and relied on the same paragraph and subsections in alleging that the Olivas Loan's lack of a certificate of occupancy constituted a breach of the Agreement. *Id*. at 7-8.

In its entirety, paragraph 17.11 of the Agreement states:

**Acceptable Investment.** There are no circumstances or conditions with respect to the Mortgage Loan, the Secured Property, the Borrower, or the Borrower's credit standing that can reasonably be expected to: (a) cause private institutional

5

> investors to regard the Mortgage Loan as an unacceptable investment; or (b) cause the Mortgage Loan to become Delinquent; or (c) adversely affect the Mortgage Loan's value or marketability.

(Agreement ¶17.11.) Based on SunTrust's discovery responses cited above, the subsections at issue with respect to the Gilmore and Olivas Loans are (a) and (c). SunTrust, however, cannot meet its burden of proving a breach of either subsection without expert testimony. Because the time for designating experts has passed and SunTrust has failed to designate an expert, SunTrust's claims for breach of the warranties contained in subsections (a) and (c) of paragraph 17.11 of the Agreement must fail.

    1.    <u>Expert testimony is required.</u>

To meet the burden of proof imposed by paragraph 17.11, SunTrust must be able to show that the lack of a final inspection or a certificate of occupancy could reasonably be expected to "cause private institutional investors to regard the Mortgage Loan as an unacceptable investment" or "adversely affect the Mortgage Loan's value or marketability." (Agreement ¶ 17.11.) Proving either of these options requires expert testimony because the subject matter of the testimony is particular in nature and outside the scope of a trier of fact's common knowledge and experience. Neither can be proved by first-hand, lay witness testimony because they contemplate more than the specific transactions at issue and involve a highly specialized subject matter.

Pursuant to Federal Rule of Evidence (the "Rules") 702, an expert may be used if scientific, technical or other specialized knowledge will assist the trier of fact in determining an issue or explaining the evidence in a case. Fed. R. Evid. 702 (2010). On the other hand, Rule 701 states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*Id*. at 701. Thus, while Rule 702 is unquestionably permissive, subsection (c) to Rule 701 makes an expert witness mandatory in order to elicit testimony concerning anything that is scientific, technical or specialized in nature.

The advisory committee notes make this point clear and state that "Subsection (c) was added in 2000 to 'eliminate the risk that the [] requirements set forth in Rule 702 will be evaded [by] proffering an expert in lay witness clothing.'" Signature Flight Support Corp. v. Landow Aviation Ltd. Partnership, 2009 U.S. Dist. LEXIS 76043, *8 (E.D. Va. Aug. 25, 2009) (quoting Fed. R. Evid. 701 advisory committee notes); see also United States v. Perkins, 470 F.3d 150, 156 (4th Cir. 2006). At this point in the case, SunTrust must do just that — proffer an expert witness in lay witness clothing — to prove the breaches of paragraph 17.11 that it claims with respect to the Gilmore and Olivas Loans.

In order for SunTrust to prove that the lack of a certificate of occupancy or final inspection could reasonably be expected to "cause **private institutional investors** to regard the Mortgage Loan as an unacceptable investment," SunTrust must provide evidence of what constitutes an unacceptable investment in the field, profession, or market of private institutional investing and that the lack of a certificate of occupancy or final inspection makes a loan fall below an acceptable standard. Similar to a malpractice claim where the standard of care in a certain field must generally be proved by expert testimony, see e.g. Dickerson v. Fatehi, 253 Va. 324, 484 S.E.2d 880 (1997), the language employed by SunTrust explicitly contemplates that an expert is required here as well. The language used in the Agreement makes the judgment of the

7

market of private institutional investors the relevant standard for determining whether there is a breach of this subsection. Because this is specialized knowledge, a lay witness for the Plaintiff could not offer any opinion evidence of this without violating Rule 701(c). Furthermore, a fact witness could only testify to the reasons why Fannie Mae, the third-party investor of the Gilmore and Olivas Loans, demanded that SunTrust repurchase these Loans.[1] However, the Agreement does not consider the specific investor's reasons conclusive or even relevant in determining the standard to be employed; instead, the Agreement looks to the collective judgment of the market. Hence, assuming *arguendo* that a lay witness testified that Fannie Mae demanded repurchase because the lack of a final inspection or certificate of occupancy made the Loans unacceptable investments to it, without an expert, SunTrust still could not prove breach of the warranty. Without an expert, SunTrust cannot link the facts and circumstances of the Gilmore and Olivas Loans to the general standard within the field of private institutional investing — the all-important and indeed necessary link to proving a breach based on the warranty language in paragraph 17.11(a) of the Agreement.

Additionally, to prove that the lack of a final inspection or certificate of occupancy would "adversely affect the Mortgage Loan's value or marketability," SunTrust must provide evidence of what, in the field of mortgage brokering or institutional investing, affects the value and marketability of mortgage loans. Alleging a breach of this subsection calls for general evidence regarding the valuing and marketing of mortgage loans and SunTrust cannot properly elicit this

---

[1] This assumes, but does not concede, that Fannie Mae is a private institutional investor, a preliminary issue that SunTrust must prove before eliciting factual testimony on standards or anything else related to Paragraph 17.11. Given the fact that Fannie Mae was chartered by Congress and is a government-sponsored entity, this is not an insignificant hurdle. See La. Municipal Police Employees Retirement System v. Fed. Housing Fin. Agency, 434 Fed. Appx. 188, 190 (4th Cir. 2011) ("Although both enterprises are structured as private corporations, Freddie Mac and Fannie Mae are government-sponsored institutions.").

specialized information from a lay witness providing fact or opinion testimony. *See* Fed. R. Evid. 701(c).

Both the standard for determining an "unacceptable investment" in the field of institutional investing and determining the value and marketability of mortgage loans consist of highly specialized knowledge. This information is so far outside a trier of fact's common understanding and experience that expert testimony is the only means by which SunTrust can lay a proper foundation to argue that Security First breached the warranties contained in paragraph 17.11 of the Agreement. See <u>Schultz v. Bank of America. N.A.</u>, 413 Md. 15, 990 A.2d 1078 (2010) (finding that a plaintiff's claim for negligence and breach of contract against a bank for adding a new customer to an account fails without expert testimony on the standard of care with respect to such a specialized banking transaction.) Without experts designated, SunTrust is now in a position where it must, in order to proceed on its theories, improperly elicit expert testimony from lay witnesses in violation of the Rules of Evidence. See <u>Hirst v. Inverness Hotel Corp., et al.</u>, 544 F.3d 221, 227-28 (3d Cir. 2008) ("As the Advisory Committee Note to Rule 701 makes clear, a party simply may not use Rule 701 as an end-run around the reliability requirements of Rule 702 and the disclosure requirements of the Rules of Procedure. Preventing such attempts is the very purpose of subsection (c)."). Because an expert is necessary and has not been obtained, SunTrust cannot prove the breaches of these warranties that it alleges without violating the Rules.

    2.    <u>SunTrust must be held to the language it chose to use in the Agreement.</u>

When interpreting contractual language, a court must focus on the intent of the parties, "which should be ascertained, whenever possible, from the language the parties employed in their agreement." <u>Pocahontas Mining LLC v. CNX Gas Co., LLC, et al.</u>, 276 Va. 346, 352, 666

S.E.2d 527, 531 (2008). In this case, the language used by SunTrust in the Agreement plainly calls for expert testimony in order to prove breach of the warranties at issue with the Gilmore and Olivas Loans. With respect to subsection (a), by using the plural form of the category of persons, "private institutional investors," the intent of the parties to make the standards used in the profession the relevant standard for determining breach is clear. Equally clear is the intent that specialized knowledge relating to value and marketability of mortgage loans is necessary to prove a breach of subsection (c) of paragraph 17.11 of the Agreement.

As drafter of the Agreement, if SunTrust did not intend for the judgment of the market of "private institutional investors" to be the relevant standard (and thus require the use of experts in proving a breach), it could have easily used the term "buyer" instead. However, it does not and under Virginia law, "the omission of a particular term from a contract is evidence that the parties intended to exclude that term." Id. at 353, 666 S.E. 2d at 531;. Furthermore, "[n]o word or phrase employed in a contract will be treated as meaningless if a reasonable meaning can be assigned to it, and there is a presumption that the contracting parties have not used words needlessly." Pocahontas Mining LLC, 276 Va. at 353, 666 S.E.2d at 531. The only reasonable meaning to SunTrust's use of the term "private institutional investors" is its plain meaning and the one advanced by Security First. In order to prove breach of subsection (a), SunTrust must put forth evidence that whatever it claimed constituted a breach could be expected to "cause private institutional investors to regard the Mortgage Loan as an unacceptable investment" — not that whatever SunTrust claimed was a breach caused the *particular* private institutional investor or buyer of *that* mortgage loan to regard it as an unacceptable investment. Because subsection (a) of paragraph 17.11 of the Agreement was written to require proof of a specialized, specific business standard, the use of an expert is inherently mandatory.

Furthermore, SunTrust drafted subsection (c) of paragraph 17.11 of the Agreement to require proof that whatever it alleged was a breach of this subsection "adversely affect[ed] the Mortgage Loan's value or marketability." By its plain language, this subsection requires evidence that is beyond the scope of common knowledge and beyond the allowable testimony of a lay witness — namely, how a mortgage loan's value and marketability are determined. A plain reading of the language SunTrust claims creates a cause of action against Security First for breach of warranties makes clear that proving such claims is impossible without expert testimony.

B.    SunTrust cannot raise the overstatement of income on the Olivas Loan as grounds for its indemnification claim where the overstatement of income was not a basis for SunTrust's <u>payment to Fannie Mae.</u>

Paragraph 22 of the Agreement states in pertinent part:

> [Security First] hereby agrees to indemnify…[SunTrust]…from and against any and all claims, losses, damages…*relating to, arising out of, based upon, or resulting from* (a) a breach by [Security First] of any representation, warranty…(c) any materially inaccurate, incomplete false, or misleading information provided by or through [Security First] to [SunTrust], (d) any misrepresentation made by or through [Security First] to [SunTrust] concerning any Mortgage Loan.

(Agreement ¶ 22(emphasis added).) SunTrust claims that the overstatement of the borrower's income in connection with the Olivas Loan constituted a violation of Security First's warranties contained in paragraph 17 of the Agreement. (Compl. ¶¶ 49, 52.) SunTrust claims that the breach of these warranties trigger Security First's indemnification obligations under paragraph 22 of the Agreement. (Compl. ¶¶ 52, 74, 75.)

Assuming *arguendo* that Security First breached its warranties under the Agreement, this breach does not trigger the Agreement's indemnification clause. A careful reading of paragraphs

11

48 and 49 of the Complaint indicates that the lack of a certificate of occupancy was the only reason asserted by Fannie Mae for its claim against SunTrust and that the overstatement of income was discovered by SunTrust independently. Discovery has confirmed this. Documents received from Fannie Mae show that its claim against SunTrust was based entirely on the lack of a certificate of occupancy. The November 13, 2008 original demand to SunTrust only recites this basis. Internal Fannie Mae comments logged into a company database between September 3, 2008 (before SunTrust received the demand) and April 13, 2009 (two days before SunTrust repurchased the loan from Fannie Mae) only refer to the occupancy issue; no mention is made of the income misstatement. There is no document produced in discovery indicating that a misstatement of income was ever the basis for Fannie Mae's claim against SunTrust.

If the borrower's misstatement of income was never raised by Fannie Mae and was not the basis of its claim against SunTrust, SunTrust cannot show that the claim, loss or damage for which it seeks indemnity (i.e., the money paid to Fannie Mae) related to, arose out of, was based upon, or resulted from the breach of Security First's warranty (i.e., the misstatement of income).

The Virginia Supreme Court has held that "the general rules which govern the construction and interpretation of other contracts apply in construing a contract of indemnity and in determining the rights and liabilities of the parties thereunder." Seaboard Air Lines Railroad Co. v. Richmond-Petersburg Turnpike Authority, 202 Va. 1029, 1033, 121 S.E.2d 499, 503 (1961). In Seaboard, a railroad provided easements to the Authority for the construction of a road. In connection with the easements, the Authority agreed to indemnify the railroad for all losses due to, arising out of, or happening in connection with the operation use and maintenance of the road. Pigeons began nesting in overpasses built by the Authority and causing damage to the railroad. The railroad claimed the Authority was liable under the indemnification clause for

the damage done by the pigeons. The court rejected the railroad's contention, noting that the pigeons were not part of the operation of the bridge. The court held that the "liability assumed by the Authority must be related to and limited by specific causes." Id. at 1034, 121 S.E.2d at 503. The court also held that if the parties intended to make the Authority liable for all damage related to the existence of the bridge, they could have done so by using a few simple words. Id. at 1034, 121 S.E.2d at 504.

In C.F. Newton v. Dickerson, Inc., 30 Va. Cir. 462 (Richmond City 1962), the court refused to enforce an indemnity agreement against a subcontractor for losses caused by a fire. The indemnity agreement in question required the subcontractor to indemnify for damage occurring in connection with the specific work being done by that subcontractor. There was no proof that the fire was in any way caused by the work done by the subcontractor. The court held that "a contract of indemnity should be construed so as to cover all losses…to which it reasonably appears to have been the intention of the parties that it should apply, but not to extend to losses…which are neither expressly within its terms nor of such a character that it can reasonably be inferred that they were intended to be within the contract." Id. at 464.

Just as with the indemnification clauses in Seaboard and Newton, the Agreement's indemnification clause is not so broad so as to encompass all losses on account of loans sold by Security First. Had the parties contemplated such a broad indemnity, they easily could have drafted an indemnification clause making Security First liable for all monies paid to the third-party purchaser of that loan. They did not. Rather, the plain language of the Agreement requires SunTrust to prove a causal link between the loss and the breach of warranty. Because Fannie Mae never raised (and likely was unaware of) the borrower's misstatement of income as part of its claim against SunTrust, SunTrust cannot prove this link.

13

**Conclusion**

SunTrust should be prohibited from introducing any evidence regarding a breach of paragraph 17.11 of the Agreement as to the Gilmore or Olivas Loans.  This section inherently requires expert opinion testimony and SunTrust has not designated an expert.  Any evidence SunTrust could introduce to prove a breach of paragraph 17.11 would necessarily violate the Federal Rules of Evidence.  Additionally, the Court should hold that the misstatement of income alleged by SunTrust with respect to the Olivas Loan is outside the scope of the Agreement's indemnification clause on which SunTrust relies.  SunTrust cannot create the causal link between its loss and the misstatement of income that the language of the indemnification clause requires.

**SECURITY FIRST BANK**

By:____/s/ Kevin J. Funk_____
                    Counsel

Kevin J. Funk (VSB No. 65465)
        kfunk@durrettecrump.com
Brittany J. Berlauk (VSB No. 80131)
        bberlauk@durrettecrump.com
DurretteCrump, PLC
Bank of America Center
1111 East Main Street, 16th Floor
Richmond, Virginia  23219
Telephone:  (804) 775-6900
Facsimile:  (804) 775-6911
        *Counsel for Security First Bank*

## **CERTIFICATE**

I hereby certify that I have, on this 27th day of July, 2012, caused a true copy of the foregoing Memorandum to be served, via the Court's ECF system, on:

    Robert D. Perrow, Esq.
    bperrow@williamsmullen.com

                                                          /s/ Kevin J. Funk
                                     Kevin J. Funk (VSB No. 65465)
                                        kfunk@durrettecrump.com
                                   Brittany J. Berlauk (VSB No. 80131)
                                        bberlauk@durrettecrump.com
                                   DurretteCrump, PLC
                                   Bank of America Center
                                   1111 East Main Street, 16th Floor
                                   Richmond, Virginia 23219
                                   Telephone: (804) 775-6900
                                   Facsimile: (804) 775-6911
                                        *Counsel for Security First Bank*